UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JERETT JORDAN                                                                          PLAINTIFF

V.                                              CIVIL ACTION NO. 3:21-CV-11-KHJ-MTP

RON KING, et al.                                                                       DEFENDANTS

ORDER

Before the Court is the [64] Report and Recommendation ("Report") of United States Magistrate Judge Michael T. Parker. For the following reasons, the Court adopts the Report and dismisses this case with prejudice.

I.      Facts and Procedural History[1]

This dispute arises from events that took place while Plaintiff Jerett Jordan was an inmate at Central Mississippi Correctional Facility ("CMCF"). A few weeks after Jordan arrived at CMCF, he confronted an inmate who had stolen some of his belongings. [15] at 19. The inmate later attacked him, and other inmates joined in. *Id.* Jordan did not fight back and suffered severe injuries to his back and face. *Id.* at 19–20.

---

[1] These facts come from Jordan's [15] Amended Complaint and his *Spears* hearing testimony. *See Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). A transcript from the hearing is an exhibit to Defendants' [40] Motion for Summary Judgment. *See* [40-1].

Although Jordan could not see the tower officer[2] during the attack, he alleges the officer failed to properly respond because he did not attempt to physically or orally stop the attack. *Id.* at 20; [40-1] at 19–21. After he was "assaulted for a long time," other Mississippi Department of Corrections ("MDOC") officers arrived, and Jordan was able to escape to the hallway. [15] at 20. While in the hallway, a female officer walked up to Jordan, laughed at his situation, and forced him to go back in the room where the attack occurred to collect his belongings. *Id.* An unknown MDOC officer then put Jordan in the back of a truck with the inmates who had just assaulted him and took them to another part of the prison. *Id,* at 21; [40-1] at 15. While in the truck, the other inmates threatened Jordan but did not otherwise harm him. [40-1] at 15. Jordan was then transported to the hospital, where he was treated for his injuries. *Id.*

Jordan filed suit against several people. He sued Defendant Ron King, supervisor of CMCF, and Defendant James Fillyaw, warden of CMCF, alleging that they failed to protect him from inmate violence, failed to properly staff the prison, and failed to properly train the prison staff.[3] [40-1] at 15–19; [42]. He sued Defendant Pelicia Hall, MDOC Commissioner, alleging that she knew about the "deficient staffing" and "didn't do nothing [sic] about it." [40-1] at 22. He sued Adana Pierre, the tower officer, for failing to intervene in the attack. *Id.* at 19–20.

---

[2] Jordan did not know who the tower officer was when he filed his Complaint. Defendants have since identified the tower officer as Adana Pierre.

[3] During his *Spears* hearing, Jordan did not mention the failure to train claims. But after the hearing, he filed a letter with the Court alleging those claims. *See* ECF [31].

2

Finally, he sued the unknown MDOC officer who placed him in the truck with the inmates that assaulted him, alleging the officer "put [his] life in danger." *Id.* at 20. As relief, Jordan sought ten million dollars from each Defendant, an injunction requiring Defendants to operate CMCF properly, and that criminal charges be brought against the inmates who attacked him, among other things. [15] at 22.

On July 6, 2022, the Court dismissed Jordan's claims against the unknown MDOC officer for failure to state a claim. Order [37] at 3–4. It also dismissed his claims for injunctive relief because he is no longer housed at CMCF and has no constitutional right to have anyone criminally prosecuted. *Id.* at 4; [40-1] at 24. Thus, only Jordan's claims for compensatory damages against Defendants King, Fillyaw, Hall, and Pierre remain.

On August 15, 2022, King, Fillyaw, and Hall ("Supervisor Defendants") filed their [40] Motion for Summary Judgment seeking to dismiss Jordan's claims against them based on qualified immunity. Jordan did not respond despite the Court providing him multiple opportunities. *See* [61]. The Magistrate Judge recommended that the Supervisor Defendants' [40] Motion for Summary Judgment be granted and the claims against them be dismissed with prejudice. [64] at 1. Additionally, the Magistrate Judge recommended that Jordan's claims against Pierre be dismissed pursuant to § 1915(e)(2)(B)(ii). *Id.* Jordan filed his objections to the Magistrate Judge's Report on January 23, 2023. [68].

II. Standard

The Court reviews de novo the portions of the Magistrate Judge's Report to which Jordan objects, 28 U.S.C. § 636(b)(1). The remaining portions are subject to the "clearly erroneous, abuse of discretion[,] and contrary to law" standards of review. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989). The Court, however, is not "required to reiterate the findings and conclusions of the magistrate judge." *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (citing *Nettles v. Wainwright*, 677 F.2d 404, 406–07 (5th Cir. Unit B 1982)).

III. Analysis

The Magistrate Judge recommended the Court grant the Defendant Supervisors' Motion for Summary Judgment because Jordan established no "cognizable constitutional claims" against them. [64] at 9. Additionally, he recommended the Court dismiss Jordan's claims against Pierre for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *Id.* Although Jordan offers broad objections criticizing the Mississippi prison system, his objections contain few factual allegations or relevant evidence supporting his specific claims. *See* [68] at 7–11. Even so, the Court will review the Magistrate Judge's Report de novo.

A. Supervisor Defendants

The Supervisor Defendants argue that their claims should be dismissed based on qualified immunity. Evaluating claims of qualified immunity involves a two-step process: "first, a court must determine whether the facts alleged show the officer's conduct violated a constitutional right," and second, a court must determine

"whether the right was clearly established . . . in light of the specific context of the case." *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008) (quotations omitted). The first prong of the qualified immunity test is a threshold issue. *See Wells v. Bonner*, 45 F.3d 90, 93–94 (5th Cir. 1995). "Thus, if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Id.* at 94.

    i.    Failure to Protect

Jordan first alleges that the Supervisor Defendants violated his constitutional rights by not protecting him from his attackers. [40-1] at 15–19, 21–22; [68] at 8–10.

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (alteration in original) (quotations omitted). That said, "every injury suffered by one prisoner at the hands of another" does not "translate[] into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "To prevail on a section 1983 failure to protect claim, [a] prisoner must demonstrate that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger,* 188 F.3d 322, 326 (5th Cir. 1999) (quotations omitted) (citing *Farmer*, 511 U.S. at 834).

Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It requires that a prison official "know[] of

and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Jordan's failure to protect claim fails because he has not shown that the Supervisor Defendants had any knowledge of the danger Jordan's attackers posed. Jordan admits that he had no prior altercations with his attackers and that he did not expect the attack. [15] at 19–20; [40-1] at 8–9. And he provides no evidence the Supervisor Defendants knew of any risk of serious harm to Jordan on the day of the attack. Because the Supervisor Defendants "had no actual knowledge of the danger posed to [Jordan], any attempt to hold [them] liable for a personal failure to protect [sh]ould fail." *See Walker v. Upshaw*, 515 F. App'x 334, 339 (5th Cir. 2013). Moreover, § 1983 "does not create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, any claim that the Supervisor Defendants are vicariously liable for the prison staff's failure to protect him also fails. *See id.* at 742 n.6 (citations omitted).

      ii.    Failure to Train

Jordan next alleges that the Supervisor Defendants violated his constitutional rights by failing to properly train CMCF staff. [31] at 1–2; [68] at 7–8.

"[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state a failure to train claim, "[a] plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the

failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (citations omitted). "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Id.* Put another way, "deliberate indifference requires that the Plaintiff show that the failure to train reflects a deliberate or conscious choice to endanger constitutional rights." *Id.* at 383 (quotations omitted).

Jordan provides no evidence to support any of the three prongs for his failure to train claim. In his objections to the Magistrate Judge's Report, he states that "the fact that the one officer in the control tower never tried to reasonably stop the immediate situation points to lack of training and experience." [68] at 8. But this singular statement without more evidence is not enough for Jordan to overcome summary judgment. *See Oliver*, 276 F.3d at 744 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."). And even if Jordan could satisfy the first two prongs, his statement does not "demonstrate a pattern of violations" needed to prove deliberate indifference. *See Est. of Davis*, 406 F.3d at 381. Jordan has thus failed to show that the Supervisor Defendants' failure to train violated his constitutional rights.

       iii.      Failure to Adequately Staff

Finally, Jordan alleges the Supervisor Defendants violated his constitutional rights by failing to properly staff CMCF. [40-1] at 16–19, 22; [68] at 7–8.

Supervisors are liable for understaffing only if they "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (quotations omitted). Generally, a plaintiff must provide evidence that a defendant (1) "implemented a policy of understaffing"; (2) the defendant was "aware that any understaffing produced a substantial risk of harm to inmate safety"; and (3) the defendant "failed to take or could take reasonable steps in an attempt to rectify the problem." *See Hinojosa v. Johnson*, 277 F. App'x 370, 379 (5th Cir. 2008). "Mere understaffing, without more, is not proof of an official policy." *Humphrey v. Hall*, No. 1:19-CV-362, 2022 WL 902741, at *10 (S.D. Miss. Mar. 28, 2022) (alteration omitted) (quoting *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987)). Such a policy would exist "only if more complete funding and staffing were possible, and that it was the deliberate intent of the policy making official not to adequately fund and staff the [prison]." *Id.* (quoting *Gagne*, 671 F. Supp. at 1135.

Jordan cites many articles and reports concerning the understaffing of Mississippi prisons. *See* [68] at 2–4. But these sources are insufficient to show that the Supervisor Defendants violated Jordan's constitutional rights. *See Humphrey*, 2022 WL 902741, at *9 (finding that newspaper articles showing understaffing in a

8

prison system is insufficient evidence to conclude that an official adopted a policy that resulted in understaffing). Jordan provides no evidence that the Supervisor Defendants "implemented a policy" of understaffing. *See Thompkins*, 828 F.2d at 304; *Hinojosa*, 277 F. App'x at 379. Although the sources he provides show that Mississippi prisons are understaffed, this does not result from an intentional policy but rather the inability of Mississippi prisons to attract and retain enough workers.[4] This is not only a chronic problem for Mississippi, but across the nation.[5] Jordan has provided no evidence that "more complete funding and staffing were possible" at CMCF or that "it was the deliberate intent" of the Supervisor Defendants "not to adequately fund and staff the prison." *See Humphrey*, 2022 WL 902471, at *10. Jordan has therefore failed to show that the Supervisor Defendants' failure to adequately staff CMCF violated his constitutional rights.

Because Jordan has established no cognizable constitutional claim against the Supervisor Defendants, they are entitled to dismissal on that basis. *See Wells*, 45 F.3d at 94. Accordingly, the Court adopts the recommendation of the Magistrate Judge and grants the Supervisor Defendants' [40] Motion for Summary Judgment.

---

[4] *See, e.g.*, Becca Schimmel, *As Chronic Prison Understaffing Plagues Region, Mississippi Tries a New Approach*, MPB (Apr. 13, 2021), https://www.mpbonline.org/blogs/news/as-chronic-prison-understaffing-plagues-region-mississippi-tries-a-new-approach/.

[5] *See, e.g.*, David Montgomery, *Prison Staff Shortages Take Toll on Guards, Incarcerated People*, Pew (Sept. 26, 2022), www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2022/09/26/prison-staff-shortages-take-toll-on-guards-incarcerated-people.

B. Adana Pierre

Although Pierre did not move for summary judgment, the Magistrate Judge recommended that Jordan's claim against Pierre be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). [64] at 9–11.

Title 28 U.S.C. § 1915 allows prisoners to proceed *in forma pauperis* upon a showing of certain information. But a court must "dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(B)(ii). Because Jordan was granted *in forma pauperis* status, § 1915(e)(2) applies to him. *See* Order [9].

To state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Witherspoon v. Waybourn*, No. 21-10407, 2022 WL 2188530, at *1 (5th Cir. June 17, 2022) (per curiam) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The facts must be viewed "in the light most favorable to the plaintiff," but the Court need not "strain to find inferences favorable to plaintiffs nor accept conclusory allegations, unwarranted deductions, or legal conclusions." *Id.* (internal quotations and citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 679. Mere "formulaic recitations of the elements" of a cause of action will not suffice. *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Jordan alleges that Pierre failed to properly respond the day he was attacked. He claims that Pierre should have physically intervened in the attack or at least commanded his attackers to stop. [15] at 20; [40-1] at 19–21. Although "an officer's failure to take reasonable measures to protect a[n] [inmate] from excessive force can give rise to § 1983 liability . . . no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006). And as with other Eighth Amendment violations, "officials who fail to prevent an injury inflicted by fellow prisoners are only liable if they possess the requisite mental state, which is that of deliberate indifference." *Coleman v. LeBlanc*, No. 19-395, 2020 WL 4679545, at *5 (M.D. La. July 28, 2020); *Farmer*, 511 U.S. at 834 ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind."). "The case law consistently holds that deliberate indifference does not exist in situations where officers have taken some steps to halt the violence . . . ." *Coleman*, 2020 WL 4679545, at *5.

Jordan does not allege that Pierre knew that his attackers posed a threat before the attack, nor does he allege that Pierre took no steps to halt the attack. In fact, Jordan admits that he did not have any idea what Pierre was doing at the time of the attack because she was "screened off" from the inmates. [40-1] at 21. Jordan also admits that he believes Pierre called for help soon after the attack started. [40-1] at 19–20. Accepting these facts as true, Pierre's response to the attack was reasonable and does not amount to deliberate indifference. *See Coleman*, 2020 WL

11

4679545, at *5; see also Rios v. Scott, 100 F. App'x 270, 272 (5th Cir. 2004) (holding that "there is no clearly established constitutional right for an officer to immediately intervene when an armed inmate attacks another inmate, as the officer may need to call for backup or seek to avoid her own serious injury"); Grant v. Washington Cnty., No. 4:19-CV-5, 2020 WL 5834415, at *5 (N.D. Miss. Sept. 30, 2020) (holding that officer's response of investigating attack and calling for help were "eminently reasonable and preclude a finding of deliberate indifference"). Jordan has therefore failed to state a claim against Pierre, and the Court adopts the recommendation of the Magistrate Judge dismissing Pierre.

Along with the Court's stated findings, it also finds that the remaining portions of the Report are not clearly erroneous or contrary to law.

IV. Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court adopts the [40] Report and Recommendation of United States Magistrate Judge Michael T. Parker as the finding of this Court. Accordingly, the Court GRANTS Defendants Ron King's, James Fillyaw's, and Pelicia Hall's [40] Motion for Summary Judgment.

Jordan's claims against those defendants are DISMISSED with prejudice. Jordan's claims against Defendant Adana Pierre are also DISMISSED with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court will issue a separate Final Judgment consistent with this Order and Federal Rule of Civil Procedure 58.

SO ORDERED, this the 21st day of February, 2023

                                                                         *s/ Kristi H. Johnson*
                                                                         UNITED STATES DISTRICT JUDGE